```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

VICTORINOX AG,                                        :

                              Plaintiff,              :

              - against -                             :

U.S. FLASH & TECHNOLOGIES LLC, B&B                    :
MEGA SERVICES LLC a/k/a XYZ
ENTERPRISES, and MESMERIZED                           :
PRODUCTIONS INC. d/b/a
LOGOPREMIUMS.COM                                      :

                              Defendants.             :

------------------------------------------------------------x
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:   10/21/10

**REPORT AND RECOMMENDATION TO THE HONORABLE RICHARD J. HOLWELL**[*]

09 Civ. 9266 (RJH) (FM)

**FRANK MAAS**, United States Magistrate Judge.

I.   Introduction

In this action, plaintiff Victorinox AG ("Victorinox") alleges that defendants U.S. Flash & Technologies, B&B Mega Services ("B&B"), and Mesmerized Productions, Inc., unlawfully sold or attempted to sell counterfeit versions of Victorinox's SwissFlash Multitool – a Swiss Army knife containing a USB drive – in violation of the Lanham Act, as well as New York and California law.

On April 28, 2010, Your Honor granted Victorinox's motion for a default judgment against B&B as to liability and referred the matter to me to conduct an inquest regarding damages. (ECF No. 21). Thereafter, by order dated April 30, 2010, I directed

---

[*]   This Report and Recommendation was prepared with the assistance of Lauren K. Williams, a student at the Benjamin N. Cardozo School of Law.

Victorinox to serve and file its inquest papers by July 6, 2010, and that B&B respond by July 20, 2010.  (ECF No. 22).   Victorinox timely complied (see ECF Nos. 24, 25), but B&B has not submitted any papers.

As set forth below, I now recommend that Victorinox be awarded a permanent injunction and a money judgment against B&B in the amount of $600,000.

II.     Standard of Review

In light of B&B's default, Victorinox's well-pleaded allegations concerning issues other than damages must be accepted as true.  See Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993); Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Time Warner Cable of N.Y.C. v. Barnes, 13 F. Supp. 2d 543, 547 (S.D.N.Y. 1998).

Additionally, although a plaintiff seeking to recover damages against a defaulting defendant must prove its claim through the submission of evidence, the Court need not hold a hearing as long as it has (a) determined the proper rule for calculating damages, see Credit Lyonnais Securities (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999), and (b) the plaintiff's evidence establishes, with reasonable certainty, the basis for the damages specified in the default judgment, see Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997).  Here, because both requirements have been met, a hearing is unnecessary.

III.    Facts

Victorinox's complaint and inquest papers establish as follows:

Victorinox is a Swiss company engaged in the business of manufacturing and selling "a wide range of knives and pocket tools . . . under the internationally-renowned SWISS ARMY mark and the cross and shield logo mark."  (Compl. (ECF No. 1) ¶¶ 1, 8).

B&B is a California corporation engaged in the sale of flash drives – small data storage devices – and various other products through its website, www.megadropshippers.com.  (Id. ¶ 11).  B&B ships products purchased through its website to addresses in this District and elsewhere.  (Id. ¶¶ 29, 32).

This case concerns Victorinox's "SwissFlash Multitool," a pocket-sized tool that contains a USB memory stick, an LED light, and several other features.  (Id. ¶ 15 ).  Victorinox holds three United States trademarks that are applicable to the SwissFlash Multitool product:  the SWISS ARMY word mark, the SWISS ARMY distinctive red color, and the SwissFlash Multitool product configuration trade dress.  (Id. ¶¶ 17-19).  These trademarks were registered between 2004 and 2009.  (Id. ¶ 19).

Investigators for Victorinox purchased a counterfeit SwissFlash Multitool from B&B, which shipped the tool to New York.  (Id. ¶ 32).  The counterfeit tool, like the actual SwissFlash Multitool, has

> an elongated rectangular body with rounded ends,
> red front and back plates with rounded ends and beveled edges,
> a metal-encased center storage area sandwiched between the
> front and back plates for receiving assorted attachments, and a
> decorative shield logo covering the light activation button
> located off-center on the front plate.

(Id.). However, the quality of the materials and construction of the B&B knock-off is significantly lower than that of the actual SwissFlash Multitool. (Id. ¶ 33).

B&B advertised and sold its infringing product wilfully and with a malicious intent to trade improperly on the goodwill associated with Victorinox's trade dress and trademarks. (Id. ¶¶ 41, 46). Furthermore, through its sale of the counterfeit product, B&B infringed Victorinox's three trademarks applicable to its SwissFlash Multitool. (See id. ¶¶ 19, 30, 32, 48).

IV.   Discussion

   A.   Damages

Under the Lanham Act, a trademark owner may choose to recover statutory damages or actual damages from an infringing defendant. 15 U.S.C. § 1117(c). In this case, although B&B and its counsel engaged in some preliminary settlement discussions with Victorinox's counsel, they never produced any documentation concerning B&B's sales volume. (See ECF No. 25 (Aff. of Andrew Gerber, Esq., sworn to on July 6, 2010) ("Gerber Aff."), ¶ 2). For this reason, Victorinox seeks to recover statutory rather than actual damages. (See ECF No. 24 (Pl.'s Mem. in Supp. of Request for Damages) ("Pl.'s Mem.") at 6).

Pursuant to 15 U.S.C. § 1117(c), statutory damages may be awarded in the amount of:

> 1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or

> 2) if the court finds that the use of the counterfeit mark was
> willful, not more than $2,000,000 per counterfeit mark per
> type of goods or services sold, offered for sale, or distributed,
> as the court considers just.

15 U.S.C. § 1117(c).

By virtue of its default, B&B has admitted Victorinox's allegation that it sold counterfeit versions of Victorinox's SwissFlash Multitool wilfully and with a malicious intent. Accordingly, Victorinox is entitled to recover statutory damages in the amount of "not less than $1,000" nor "more than $2,000,000" per counterfeit mark used by B&B. Inasmuch as B&B infringed three Victorinox trademarks, the monetary question becomes: Where along the broad statutory spectrum of $3,000 to $6,000,000 should an award against B&B lie?

In the absence of any guidelines for determining the appropriate monetary award in a case involving wilful trademark violations, courts often have looked for guidance to the better-developed case law under the Copyright Act, 17 U.S.C. § 504(c), which permits an award of statutory damages for wilful copyright infringement. See, e.g., Polo Ralph Lauren, L.P. v. 3M Trading Co., No. 97 Civ. 4824 (JSM) (MHD), 1999 WL 33740332, at *5 (S.D.N.Y. Apr. 19, 1999); Sara Lee Corp. v. Bags of N.Y., Inc., 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999); Guess?, Inc. v. Gold Ctr. Jewelry, 997 F. Supp. 409, 411 (S.D.N.Y. 1998), rev'd on other grounds sub nom. Gucci Am., Inc. v. Gold Ctr. Jewelry, 158 F.3d 631 (2d Cir. 1998). As the copyright cases indicate, where, as here, a defendant is shown to have acted wilfully, a statutory award should incorporate not only a

compensatory, but also a punitive component to discourage further wrongdoing. See, e.g., N.A.S. Import, Corp. v. Chenson Enters., 968 F.2d 250, 252 (2d Cir. 1992); Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1117 (2d Cir. 1986). Among the factors that courts have considered are the value of the copyright, the goals of specific and general deterrence, and "whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced." See Gucci Am., Inc. v. MyReplicaHandbag.com, No. 07 Civ. 2438 (JGK) (DFE), 2008 WL 512789, at *2 (S.D.N.Y. Feb. 26, 2008) (quoting Fitzgerald Publ'g Co., 807 F.2d at 1117).

Although B&B initially expressed interest in a negotiated solution, it never produced any sales figures to Victorinox. Instead, it apparently deactivated its website and went underground.[1] Therefore, neither Victorinox nor the Court can determine whether B&B is selling counterfeit Victorinox goods through other channels, much less how much product it sold before the website was taken down. In similar circumstances, the court in MyReplicaHandbag.com awarded the plaintiff $100,000 for each trademark violation. 2008 WL 512789, at *5. In recommending that award to Judge Kaplan, who adopted the report, Magistrate Judge Eaton noted that most judges were issuing awards "well below the [statutory] maximums" in trademark cases. Id. (collecting cases). At that time, the statutory maximum for wilful trademark violations was $1,000,000 per

---

[1] In early August, my intern, Ms. Williams, repeatedly attempted to access www.megadropshippers.com. Each time, all that was displayed was a message stating that the website was undergoing regular maintenance and would be active again within one hour. More recent attempts to access the site resulted in the display of a message stating: "Bad Request (Invalid Host Name)."

violation.  See id. at *4.  Subsequently, Congress doubled both the monetary range for most trademark violations and the maximum award for wilful violations.  See Prioritizing Resources and Organization for Intellectual Property Act of 2008, Pub. L. No. 110-403, § 104, 122 Stat. 4256, 4259 (2008).

In addition to statutory damages, Victorinox seeks to recover its attorneys' fees and costs.  (Pl.'s Mem. at 6).  The Lanham Act provides that a prevailing party may also recover "the costs of the action" and in "exceptional cases" its "reasonable" attorneys' fees.  15 U.S.C. § 1117(a).  When wilfulness has been established, courts consider the case to be "exceptional" within the meaning of the statute and therefore award attorneys' fees.  See, e.g., Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 849, 854 (2d Cir. 1995) ("[t]he finding of willfulness determines the right to attorneys' fees"); see also Twin Peaks Prods. v. Publ'n Int'l, Ltd., 996 F.2d 1366, 1383 (2d Cir. 1993) (attorneys' fees should be awarded only on evidence of fraud or bad faith).  As noted previously, by failing to respond to the complaint, B&B has admitted that it had "an intentional, willful, and malicious intent" to violate Victorinox's trademarks.  (Compl. ¶ 46).  Consequently, Victorinox is entitled to recover its reasonable attorneys' fees. H.W. Carter & Sons, Inc. v. William Carter Co., 913 F. Supp. 796, 805 (S.D.N.Y. 1996) (fees may be awarded when party acts "willfully, intentionally and with a callous and reckless disregard" for the plaintiffs' rights) (quoting Getty Petroleum Corp. v. Bartco Petroleum Corp., 858 F.2d 103, 113-14 (2d Cir. 1988)).

In support of its fee application, Victorinox has submitted heavily redacted bills from its outside counsel, Kilpatrick Stockton LLP, together with a chart indicating certain adjustments it has made to account for the fact that there are three defendants in this case. Victorinox's default adjustment has been to attribute one-third of each billable amount to B&B. At times, however, it has attributed a lower share of a time charge, i.e., one-quarter or one-fifth, to B&B. Also, with respect to many of the later time charges, Victorinox has attributed half, three-quarters, or all of the indicated time to B&B. (Gerber Aff. Exs. A, B).

Before making its submission concerning fees and costs, Victorinox requested permission to submit its counsel's unredacted bills to the Court for in camera review. (Letter from Mr. Gerber to the Court, dated June 30, 2010). By memorandum endorsement dated July 1, 2010, I instructed Victorinox to submit redacted bills as part of its motion papers, noting that unredacted copies of the bills could be submitted to me in camera. (ECF No. 23). Although Victorinox's redacted bills are part of Victorinox's publically-filed motion, my Chambers has never received any unredacted bills. This makes it virtually impossible to determine whether Victorinox's allocations of its attorneys' fees are justified and fair.

In inquest referrals, magistrate judges frequently must expend considerable time on a line-by-line review of attorneys' bills. I, for example, have often had to read through numerous cryptic entries in lengthy invoices, only to make relatively minor adjustments as part of my ultimate recommendation. See, e.g., Nat'l Audubon Soc'y, Inc.

v. Sonopia Corp., No. 09 Civ. 975 (PGG) (FM), 2010 WL 3911261, at *5 (S.D.N.Y. Sept. 1, 2010) (reducing $13,107 fee request by $2,000); C.I.T. Leasing Corp. v. Brasmex-Brasil Minas Express LTDA, 03 Civ. 5077 (DAB) (FM), 2007 WL 840287, at *6 (S.D.N.Y. Mar. 20, 2007) (reducing $353,566 fee request by $2,334); Top Rank, Inc. v. Ortiz, No. 01 Civ. 8427 (WHP) (FM), 2003 WL 1960211, at *5 (S.D.N.Y. Mar. 27, 2003) (reducing fee request by $306.25); see also Bd. of Trs. of Local 295/Local 851-I.B.T. Emp'r Grp. Pension Trust Fund v. Empire Freight Sys. Corp., No. 08 Civ. 6611 (GBD) (FM), 2009 WL 2986383, at *4 (S.D.N.Y. Aug. 7, 2009) (reducing costs by $56).

In MyReplicaHandbags.com, Magistrate Judge Eaton took a somewhat different approach, declining to specify the plaintiffs' attorneys' fees and costs because his recommended statutory damages award was sufficiently capacious to compensate the plaintiffs fully for both their damages and those additional expenditures. 2008 WL 512789, at *5. Judge Eaton also made a similar recommendation in a prior lawsuit. See id. (citing Malletier v. Whenu.com, Inc., 05 Civ. 1325 (LAK) (DFE), 2007 WL 257717, at *6 (S.D.N.Y. Jan. 26, 2007)). In view of the limitations imposed by Victorinox's failure to provide unredacted legal bills, recommending a lump sum intended to compensate Victorinox not only for its statutory damages but also for its fees and costs is an equally appropriate course of action here.

I therefore recommend that Victorinox be awarded $200,000 per trademark violation, i.e., a total of $600,000, as statutory damages and compensation for its

attorneys' fees and costs.

  B.  <u>Permanent Injuction</u>

    Victorinox also seeks an injunction permanently enjoining B&B from engaging in any future infringement of Victorinox's trademarks.  (Pl.'s Mem. at 10).  A court may issue such an injunction when the moving party establishes "(1) actual success on the merits, and (2) irreparable harm."  <u>Gucci Am., Inc. v. Duty Free Apparel, Ltd.</u>, 286 F. Supp. 2d 284, 290 (S.D.N.Y. 2003).  In a case under the Lanham Act, "proof of a likelihood of confusion establishes both likelihood of success on the merits and irreparable harm."  <u>Brennan's, Inc. v. Brennan's Restaurant, L.L.C.</u>, 360 F.3d 125, 129 (2d Cir. 2004) (citing <u>Hasbro, Inc. v. Lanard Toys, Ltd.</u>, 858 F.2d 70, 73 (2d Cir. 1988)).

    In this case, there is a likelihood of confusion between B&B's counterfeit tool and the SwissFlash Multitool because the counterfeit tool "incorporate[s] or mimic[s] the primary source-identifying features of the SwissFlash Multitool."  (Compl. ¶ 40). Indeed,  visitors to B&B's website viewing the depiction and description of B&B's product would likely think they were buying a true SwissFlash Multitool since the infringing product uses Victorinox's distinctive red color and product configuration and is described as a "SWISS ARMY KNIFE."

    Given this likelihood of confusion, Victorinox has established both a likelihood of success on the merits and irreparable harm; injunctive relief is therefore appropriate.

V.   Conclusion

For the foregoing reasons, Victorinox should be granted a judgment against B&B awarding Victorinox statutory damages in the amount of $600,000 and permanently enjoining B&B from further violations of Victorinox's trademarks.

VI.   Notice of Procedure for Filing of Objections to this Report and Recommendation

The parties shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. §636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. See also Fed. R. Civ. P. 6(a) and (d). Any such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Richard J. Holwell and to the chambers of the undersigned at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be directed to Judge Holwell. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. See U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); Thomas v. Arn, 474 U.S. 140 (1985).

Dated:   New York, New York
         October 21, 2010

_____
FRANK MAAS
United States Magistrate Judge

Copies to:

Andrew I. Gerber, Esq.
Lisa Pearson, Esq.
Kilpatrick Stockton LLP
Fax: (212) 775-8811

B&B Mega Services LLC
9640B Mission Gorge Road #237
Santee, California 92071
[Certified Mail]